also known as Anki, also known as EO for balance. Ms. West, for the balance. Mr. Boone, for the equivalent. Good morning, Ms. West, whenever you're ready. Good morning, Your Honor. Good morning. Good morning. I am Okira Ana West, the lawyer for Mr. Cano-Flores. I hope I can explain this case to you completely. Now imagine, if you would, Your Honors, that you were facing a life sentence in a country you have no familiarity with. You've never been to this country, the United States. And the only person between you and that life sentence is your lawyer. There's no one translating for you during your conversations with your lawyer. And you can't even pantomime or give hand signals to your lawyer because of the formality of the courtroom. And what we have here is a life sentence because of the age of Mr. Cano-Flores when he was sentenced. More than 50 years old and he got a 35 year sentence. That's life. What could be more obvious than a client having the right to communicate with his lawyer during trial? The Sixth Amendment demands that. So he did not raise this issue on his direct appeal, did he? No, Your Honor. So on his 2255, he complains of several things. And I gather your position is essentially there was no discretion left for the district court. It had to appoint a translator for Mr. Flores at all times, regardless of what arrangements his lawyer may have had, what arrangements he appeared to go along with throughout the trial and throughout his over 50 meetings with his counsel and his counsel's assistant. So my question at this point is, what has he pled in the way of prejudice? What defense was not raised and it would have made a difference? What witness was not interviewed and would it have made a difference? All those sorts of things. And I didn't see anything. And maybe I missed it. Suggesting there was prejudice to your Mr. to the appellant in the outcome of the trial. And maybe you could help me there. Yes, Judge Rogers. First, with regard to your first issue, it's not our position that Mr. Flores needed a court certified translator throughout the whole time. I think that that would have been easy for Mr. Gilbert to do. And I address that. But our position is that he needed someone to translate his communications with Mr. Gilbert during the course of the trial. Well, Mr. Gilbert, in testifying, offered his explanation as to why he deemed it most important for him to pay attention to what was going on in the courtroom in terms of the witnesses who were appearing, as well as any instructions from the district court. And here the district court credited that as an understandable and reasonable strategy, given the elaborate system that Mr. Gilbert had set up for communicating and no indication now of actual prejudice to the outcome of the case. And that's why my first question I posed it as I thought you were either suggesting that the district court's findings about reasonable strategy and no prejudice were clearly erroneous use of discretion. And I thought, well, if that's the case, then what's left except to say that you are arguing that error was inferior to a point in a translator. I know, Your Honor, what we say is that there is a prejudice that was suffered because Mr. Flores and his lawyer did not communicate during the course of the trial. And I agree with the court what you just said that the district court credited the fact that he wanted to pay attention during witness testimony. But I outlined in my brief the many times that trial lawyers often communicate with their clients before court, during the lunch hour, after court, or even on the weekends and evenings at the jail. A contextual decision focused on specific prejudice to the defendant in the particular proceeding. It's not a federal rule that some lawyers do it in some circumstances. I think on the appendix on page 18, there are specific notes that were taken during the trial on February the 19th of 2013, where comments from Mr. Flores kind of clearly show that there were lies from the witnesses from the stand, and he wanted those lies corrected. Attorney said he already knew that was his client's position. Well, I didn't have to discuss it during trial that they planned on a strategy, given that Mr. Flores, Count Flores, was of the view that certain witnesses were not telling the truth. Well, you have to have a pretrial plan before you go into trial, but how is it that everyone who practices law and tries cases knows that no trial goes as planned? I'm not saying the pretrial plan was wrong. I'm just saying that that plan changed when people testified about things that were not in a plan. We would have to find that the testimony given before the district court in this case, or actually the magistrate judge initially, was clearly erroneous, contradicted by the record, and I'm asking you to be very specific as to what was the prejudice here. I understand that the trial could have been conducted differently, and the district court here found that, first of all, it was error for the magistrate judge to presume prejudice, and secondly, that there were just vague assertions about prejudice. Yes, Your Honor, I would point to just the fact of what I mentioned in the record, but also the fact that a witness lied. That is the prejudice, and the reason why that's prejudicial is because when a witness is lying on the stand, and there's no cross-examination to contest that lie, the jury is not going to see that that witness is, in fact, lying. I know of no such rule, okay, that whenever a witness on cross-examination is shown not to be conforming his or her evidence to some objective evidence, that necessarily there has to be a new trial. And I don't want to take up any more time here, but I think you know my concern that I'm not aware of the defendant's arguments here about specific prejudice. Yes, Your Honor, we noted in our brief about the notes from Mr. Flores that showed specific lies, one being in the letter from the jail, appendix page 297. He also has an OVO sign, and again, on page 279 of the appendix, the jurisdiction in the Estado Toluca, talking about jurisdiction, that would have gone to the DEA agent who testified about the wiretaps. All I'm saying is there's a specific prejudice here because, as this court noted in the United States v. Mohammed, a court that you're familiar with, Judge Rogers, in assessing prejudice, the ultimate question is whether the defendant has shown a reasonable probability that adequate investigation, and here it would be communication, would have enabled trial counsel to sow sufficient doubt about the witness's credibility to sway even one juror. And that's what our argument is. Mr. Gilbert. In your argument, counsel, what I'm asking for is, where is the evidence to support it? And you're saying that, well, witnesses lied, counsel testified he knew that, they prepared the strategy in that light. Maybe you should have done more, but your client hasn't made these specific arguments. That's what I'm trying to grip with, not that you can cite places in the record where your client was saying that this witness lied, that witness lied. Well, the evidence, Your Honor, would be in the written notes between Mr. Flores and his lawyer, and those notes are gone. Those notes were destroyed. And not only that, Mr. Gilbert's notes from the trial, also gone and destroyed. So those communications that would have shown specific prejudice, what those lies were about, are gone. And we don't have those to fall back on. And those are facts that we don't have in front of us to show what the specific prejudice was, other than the fact that the witness was in fact lying. I see my time is up. Thank you. We'll give you a minute on rebuttal. Thank you. Let's hear from the government. Okay, please, the court. Under Strickland, this court reviews counsel's performance deferentially. And under that standard, Kano's attorneys acted reasonably in their methods of communicating with Kano and in using Valencia as an interpreter. Even if counsel's performance was deficient, Kano was not prejudiced. As to communications, Strickland said, this is in page 688 of 466 U.S., that counsel actually has several duties in dealing with his clients. One is a duty to consult with the client. He also has a duty to test the government's case. And that would include paying close attention to the testimony of the government's witnesses so you can prepare an effective cross-examination, especially in a case like this one, in which the defendant and the attorneys had agreed that the defense was going to be reasonable doubt. The defendant was not going to testify, and there was not going to be an affirmative defense. That means that client attorney has a lot of latitude in balancing the various duties that he has. And client consultation is not an absolute duty. And in this court in McLaughlin, at 164 Federal 3rd, 1, both those cases upheld reasonable restrictions on a counsel's right to consult with his client during the trial. Now, counsel's method of communication with Kano was reasonable in this case. And why? The defense team, including Valencia, the interpreter, met with Kano 50 times before trial to discuss the trial strategy, where they agreed to present the reasonable doubt defense. They also agreed that Kano would communicate with Gilbert during the trial by passing him notes. And here's what happened during the trial. When Kano passed the note to Gilbert, Gilbert would do one of either two things. He would either nod to Kano to show that he had received the note, but also in other circumstances, he would write something on the note and pass it back to Kano. And that's at supplemental appendix 134 and 135. As he explained, and that's also on pages 134 and 135, he could understand the notes that Kano passed to him because he had a conversational ability in Spanish. During a break in the trial, Gilbert would read Kano's notes, and that's at supplemental appendix 524 and 525. And then at the end of the day, Hughes, the second attorney, would read Kano's notes or his journals on her way back home. And although she did not understand Spanish, she explained that this is at pages 711 and 712 of the supplemental appendix, that these notes were not literature. They basically were notes that described names and numbers, like the amount of drugs or the amount of money. As the defense attorney stated, further communication wasn't really necessary in this case because there were no breaking events that Kano had to say to his attorneys, other than to say that he thought that the government's lawyers were liars. But the defense already knew that. They had met with him 50 times before trial. They knew what the defense was going to be, and they knew that they were going to test the government's case by showing that the witnesses were liars. And, of course, the defense attorneys met with Kano at the jail four or five times during the two-week trial, and Valencia met with him also, and she shuttled, using the word that the district court used, shuttled notes back and forth to the attorneys. As to Valencia, she was an effective interpreter. The district court's finding that she made no substantive errors in translation is not a clearly erroneous finding. Even if there was an error in this case, Kano was not prejudiced. The test for prejudice in this context is whether he's shown a reasonable probability that the result of the trial would have been different under Strickland. As to the notes, Gilbert testified that all they said, essentially, was that Kano thought that the witnesses were liars, but they already knew that. And as there's a claim here about Kano wanting to impeach a witness with respect to a roaming claim, on direct appeal, this court stated that the phone was sometimes in roaming mode. That's at 796 Federal 3rd and 86. And the calls were properly admitted whether the phone was in roaming mode or not, because as this court found, the calls were heard in a listening post in the U.S. The presumption of prejudice test doesn't apply here. That only applies when there's been a complete denial of counsel, where counsel has entirely failed to challenge the government's case, or whether there's a conflict of interest by counsel. None of those situations exist here. So unless there are any further questions, we would ask this court to affirm. Judge Rogers, thank you. I understand, Judge Rogers, that you want specific examples of how this prejudice, Mr. Kano Flores, and then the result of the case would have been different. That's what the law requires. Yes, Your Honor, I understand. The government just stood up and said, and also said in their brief that Mr. Gilbert communicated with Mr. Kano Flores with a nod. And that Mr. Gilbert, in fact, could understand those notes. We disagree with that. There is no evidence that Mr. Gilbert could understand those notes because we don't have those notes and could not have challenged that. He testified, Mr. Gilbert, that he could not communicate any substantive issue with Mr. Kano Flores, such as, for example, the roaming. That would have been a substantive issue that he could have talked about. Why? We said on direct review that the communications were properly intercepted by agents in Texas. That's correct, Your Honor. That's what you held on appeal. But that could have been challenged. Why would it matter? It would matter because it would have been challenged. The agent could have been impeached with evidence that, in fact, the phone was not on roaming. And that's something that Kano Flores, in the record, clearly tried to talk to his lawyer about, but was never able to talk to his lawyer about. Thank you. Finally, I'd like to say, Your Honor. Just briefly, please. I'm sorry, sir? Just briefly. Yes. We believe that presumption in this case does apply and that the court's previous cases, Mohammed and Bell, show that presumption would apply in this case. Thank you. Thank you. The case is submitted.
judges: Katsas, Randolph, Rogers